UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SCVNGR, INC. d/b/a LEVELUP<br><br>      Plaintiff,<br>v.<br><br>DAILYGOBBLE, INC. d/b/a RELEVANT<br><br>     Defendant. | Civil Action No. 1:16-cv-00134-M-LDA<br><br>**Oral Argument Requested** |

## <u>PLAINTIFF SCVNGR, INC.'S D/B/A LEVELUP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiff SCVNGR, Inc. d/b/a LevelUp ("LevelUp"), through its undersigned counsel,

hereby submits this Reply in support of its Motion for Preliminary Injunction (Dkt. No. 12).

## I. INTRODUCTION

DailyGobble, Inc. d/b/a Relevant's ("Relevant") opposition to LevelUp's motion for

preliminary injunction does not dispute that the point-of-sale terminals used by Relevant to enable

its mobile payment and rewards system infringe LevelUp's U.S. Patent No. 8,924,260 ("the '260

patent"). Rather, as in Relevant's pending motion to dismiss, Relevant argues only that it "does not

provide or operate" the infringing point-of-sale terminals. Dkt. 18-1 at 2. Relevant's argument is

inapposite. LevelUp's motion seeks to enjoin Relevant's ***use*** of the point-of-sale terminals in an

infringing manner, *i.e.*, to enable the mobile payment and rewards system that it provides for

CilantroMex and two other clients.[1]

---

[1] As pointed out in LevelUp's motion, Relevant provides a mobile payment system using the infringing point-of-sale terminals to both CilantroMex and Blaze Pizza. LevelUp learned subsequent to the filing of the motion that Relevant also provides an identical system using the same terminals for one other client, Shredwich.

Relevant's opposition also does not demonstrate that LevelUp's '260 patent is likely to be found, by clear and convincing evidence, to be invalid or unenforceable. The only grounds for invalidity asserted by Relevant were considered, and rejected, by the United States Patent & Trademark Office ("Patent Office") during prosecution. Likewise, Relevant bases its assertion of inequitable conduct on grounds that the Federal Circuit has held, squarely, to be insufficient to plead that defense.[2]

Finally, Relevant does not provide any compelling response to LevelUp's showing that LevelUp will suffer irreparable harm in the absence of a preliminary injunction. Rather, Relevant attempts to recast the competitive market to include any company that has built a mobile app for a restaurant. Relevant cannot, however, identify any other entity providing a system for mobile payments and rewards at the point-of-sale comparable to LevelUp's patented systems, now also in use by Relevant. LevelUp competed directly with Relevant for the clients to which Relevant now provides its infringing system. This loss of market share constitutes irreparable harm.

For these reasons, the Court should grant LevelUp's motion for preliminary injunction.

## II.    LEVELUP IS LIKELY TO PREVAIL ON THE MERITS

### A.    LevelUp Demonstrated a Likelihood of Infringement

Relevant's sole argument for non-infringement in this case is that the "mobile apps" that it provides for CilantroMex and Blaze Pizza are not "point-of-sale terminals" as required by the claims of the '260 patent. LevelUp, however, does not assert that Relevant's apps perform a point-of-sale function, or that Relevant manufactures or provides any point-of-sale terminal.

LevelUp's motion for preliminary injunction (and its Complaint in this action) explains that Relevant, like LevelUp, offers restaurant operators a system for tracking and redeeming

---

[2] On June 14, 2016, LevelUp asked Relevant to withdraw its Affirmative Defenses of inequitable conduct and invalidity based on the clear deficiency in Relevant's pleading.

consumer rewards (such as loyalty rewards programs, and one-time rewards like birthday promotions), and initiating mobile payments. Dkt. No. 1, Complaint, ¶¶ 2, 15, 19-20. This "Relevant system" (depicted below) includes, *inter alia*, a Relevant-built mobile application ("app") branded for the restaurant, and used by a consumer, and a Relevant-hosted transaction server for receiving and processing a mobile payment QR code and transaction request. *Id.*



Like LevelUp, the transaction server of Relevant's system: (i) resolves a QR code received from the restaurant to identify a registered user; (ii) applies or accrues available rewards or offers; and (iii) issues the user an email receipt for the transaction. Prokop Decl. (Dkt. No. 12-2) ¶¶ 11-14.

As depicted above, Relevant's mobile payment and rewards system requires, as an integral system component, a point-of-sale terminal device that scans and decodes the Relevant QR code displayed in the Relevant-built mobile app, and then transmits that data, as part of a transaction request, from the restaurant to the Relevant transaction server. *Id.*; *see also* Dkt. No. 12, p. 9 ("As part of the infringing mobile payment system, Relevant utilizes software installed on these CilantroMex/NCR POS terminals ('integration software') that creates the functionality

described in Claim 11."). In the accused system, the Relevant QR code is formatted according to the description in LevelUp's '260 patent to include two "REL" data sentinels at the beginning and end of the transaction information encoded within the QR code. Prokop Decl. (Dkt. No. 12-2) ¶¶ 11-14. Relevant does not dispute the data structure of its QR codes; nor does it dispute that the point-of-sale terminals that transmit the Relevant QR code to the Relevant transaction server utilize the components and steps claimed in LevelUp's '260 patent. *See* Dkt. No. 18-1, p 7.

Relevant also does not dispute that it ***uses*** these point-of-sale devices in an infringing manner, to enable the mobile payment system and service it provides for its restaurant clients. *Id*. Indeed, if Relevant did not use its clients' point-of-sale terminals in an infringing manner, Relevant would not be able to provide its mobile payment and rewards system. The manner in which Relevant uses of these point-of-sale devices to is not a common practice. To LevelUp's knowledge, Relevant is the ***only*** entity using client point-of-sale terminals in a manner that infringes LevelUp's '260 patent.[3] Declaration (2nd) of Andrew Boch, ¶ 7.

Relevant's use of the point-of-sale terminals in this infringing manner—to enable the Relevant mobile payment and rewards system—constitutes direct patent infringement by Relevant. 35 U.S.C. § 271(a); *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1285 (Fed. Cir. 2011) ("By causing the system as a whole to perform this processing and obtaining the benefit of the result, the [party] has 'used' the system under § 271(a)"); *Iron Gate Sec., Inc. v. Lowe's Companies, Inc*., No. 15-CV-8814 (SAS), 2016 WL 1070853, at *4 (S.D.N.Y. Mar. 16, 2016) (rejecting argument that defendant could not infringe because "terminals" used by defendant in system were provided by third-party).

---

[3] As described further below, the crux of the LevelUp '260 patent is an invention for converting a traditional point-of-sale terminal, designed to receive payment instrument information through a designated channel (*i.e.*, a magnetic stripe reader), into a system capable of identifying and distinguishing a mobile payment token input as part of a data stream through a channel (*i.e.*, a bar code or QR code reader) that may also include non-payment instrument information. *E.g.*, Carroll Decl. (Dkt. 12-3), Ex. 1 '260 patent, col. 1, ll. 35-56.

4

Relevant argues that Relevant does not "*use*" the infringing point-of-sale devices as part of its mobile payment system because the devices are provided by a third-party (NCR Corp.) and operated by its clients. Even if Relevant were correct that its clients, and not Relevant, are the entities actually "using" the point-of-sale terminals in an infringing matter, this use by Relevant's clients still constitutes direct patent infringement by Relevant.

The *en banc* Federal Circuit recently clarified precisely this question in *Akamai Techs., Inc. v. Limelight Networks, Inc*., 797 F.3d 1020, 1024 (Fed. Cir. 2015). In *Akamai*, the defendant Limelight argued that it could not be responsible for direct infringement of an Akamai patent because Limelight's clients (and not Limelight) performed certain steps of the claimed methods. *Id*. The Federal Circuit rejected Limelight's argument, finding that Limelight is responsible as a direct infringer because Limelight conditioned its clients' use of the Limelight service on the clients' performance of the infringing steps. *Id*. at 1024-25.

The *en banc* decision in *Akamai* forecloses Relevant's position in this case. *Id*. Relevant cannot avoid its infringement of LevelUp's '260 patent by arguing that its clients operate the point-of-sale terminals in an infringing manner,[4] as a necessary requirement to enable the Relevant mobile payment and rewards system. *See id*. Relevant is therefore responsible for the direct infringement alleged in LevelUp's Complaint. *See id*; *see also Fujitsu Ltd. v. Belkin Intern., Inc*., 782 F. Supp. 2d 868, 891 (N.D. Cal. 2011) (denying motion to dismiss allegations of direct infringement).

Separate and apart from LevelUp's assertion of direct infringement based on Relevant's "use" of the point-of-sale terminals to create an infringing mobile payment system, Relevant does

---

[4] This also is not a case asserting "divided" direct infringement, in which the patent steps are performed by different parties acting in coordination. *E.g., Mayne Pharma Int'l PTY Ltd. v. Merck & Co*., No. CV 15-438-LPS-CJB, 2015 WL 7833206, at *3 (D. Del. Dec. 3, 2015) (asserting infringement based on "a concerted effort by three corporate entities that are under common ownership and control"). In this case, *all* of the steps of the claims are conducted within the point-of-sale system used by Relevant to enable its mobile payments and rewards system.

not respond to LevelUp's assertions of indirect infringement (inducement) under 35 U.S.C. § 271(b), which assertions are the subject of Relevant's pending motion to dismiss. *See* Dkt. No. 1, Complaint; *see also* Dkt. No. 19, Opposition to Motion to Dismiss. For the reasons set forth in the briefing concerning Relevant's motion to dismiss, LevelUp is likely to prevail in establishing indirect infringement even if Relevant's actions were not direct infringement. *Id.*

**B.      Relevant Has Not Raised a Substantial Question of Validity**

Relevant makes only two arguments against the validity of the '260 patent. Neither argument is supported by any evidence. Relevant has not shown that it is likely to establish invalidity of the '260 patent by clear and convincing evidence.

1.      <u>Relevant Is Not Likely to Establish Invalidity Based on Obviousness</u>

Relevant argues that the claims of the '260 patent are invalid as obvious under 35 U.S.C. § 103. In support of its argument, Relevant relies on a single grounds: a combination of two references expressly considered by the Patent Office during prosecution. Dkt. No. 18-1, pp. 18-19. The references upon which Relevant relies (Chaikin and Ramamoorthy) were cited by the Patent Office as grounds for initially rejecting the asserted independent claims of the '260 patent in an office action dated April 30, 2014. Decl. (2nd) of Andrew Boch, ¶ 8, Ex. 4. In that same action, the Patent Office concluded that four other pending dependent claims were novel and allowable over that same combination. *Id.*, p. 9. LevelUp's response merged the allowable dependent claims into independent claims in accordance with the Patent Office's analysis of the novel and patentable claims. *Id.*

Relevant's recitation of this rejected argument for obviousness provides no new evidence, no expert analysis, nor any element-by-element comparison of the asserted claims to the asserted prior art. Dkt. No. 18-1 at 18-19. Indeed, Relevant admits that the cited combination of prior art fails to disclose key claim elements of the claims as issued. *Id.* Relevant's cursory

and unsupported allegation of invalidity is insufficient to establish that Relevant is likely to prove patent obviousness by clear and convincing evidence. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376-77 (Fed. Cir. 2009) (patents presumed valid).

### 2. Relevant Is Not Likely to Establish Invalidity Under Section 101

As an alternative grounds for invalidity, Relevant argues that the asserted claims of the '260 patent are invalid under 35 U.S.C. § 101 as claims directed to non-patent eligible subject matter. Specifically, Relevant argues that the claims are directed to nothing more than the "abstract idea" of "recognizing a specific piece of information from a stream of information, and combining that information with a purchase amount to submit for payment." Dkt. 18-1, pp. 12-13. Relevant's argument stretches the applicability of 35 U.S.C. § 101 too far.

In *Alice v. CLS Bank*, the United Sates Supreme Court addressed the scope of patent-eligible subject matter under 35 U.S.C. § 101, and the long-standing precedent that patents may not issue to "[l]aws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty Ltd. v. CLS Bank Int'l,* 134 S.Ct. 2347, 2355 (2014); *see also Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,* 133 S.Ct. 2107, 2116 (2013). The Court in *Alice* applied a two-step process: first, a court determines whether a claim is directed to "a patent-ineligible concept," such as an abstract idea. If so, the court assesses whether the claim limits the abstract idea to a specific, "patent-eligible application" of the concept. *Alice*, 134 S. Ct. at 2355. The Court's test in *Alice* sought to distinguish between claims that seek to pre-empt the use of the "building blocks of human ingenuity" (which are not patent-eligible) and claims that recite the application of a concept (which are patent-eligible). *Id*. at 2354. In *Alice*, the Court applied its test to conclude that the asserted patent claims, directed to the fundamental idea of "intermediated settlement,"[5]

---

[5] The Court described the concept of "intermediated settlement" further as the idea of "the use of a third party to mitigate settlement risk." *Id*. at 2356.

were abstract and not patent eligible. *Id*. at 2355; *see also Bilski v. Kappos,* 561 U.S. 593, 604 (2010) (finding that claims directed to the "fundamental economic practice" of hedging financial risk were abstract). The Court went on to hold that the addition of "generic computer" components into the claims directed to the abstract idea of "intermediated settlement" were not sufficient to limit the patent claim to a specific application. *Id*. at 2358. As such, the claims in *Alice* were held to be non-patent eligible because they simply stated "an abstract idea while adding the words 'apply it with a computer,'" and thereby sought to preempt use of all forms of "intermediated settlement" performed on any computer. *Id*.

In this action, the asserted claims of the '260 patent are not akin to the claims in *Alice* or *Bilski*, and are not directed to an "abstract idea." Relevant struggles to identify an "abstract idea" within the '260 patent claims, which it articulates as the process of "*recognizing a specific piece of information from a stream of information, and combining that information with a purchase amount to submit for payment*." Dkt. No. 18-1, pp. 12-13 (emphasis added). Relevant's effort to recast the claims in this fashion is improper. Both the Supreme Court and Federal Circuit have repeatedly cautioned against the exercise of forcibly identifying an abstract idea in a claim, recognizing that "essentially every routinely patent-eligible claim involving physical products and actions ***involves*** a law of nature and/or natural phenomenon." *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244, 2016 WL 2756255, at *4 (Fed. Cir. May 12, 2016) (emphasis original); *see also Alice*, 134 S. Ct. at 2354 ("all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas"). The Federal Circuit explains that the proper inquiry is not merely whether a claim "***involves***" some patent-ineligible concept, but whether the claim "as a whole is ***directed to*** excluded subject matter." *Id*. at *4 (emphasis

added). Moreover, contrary to Relevant's current suggestion, the law is clear that patent claims concerning software are not "inherently abstract." *Id*.

In *Enfish*, for example, the Federal Circuit reversed a finding of patent-ineligibility with respect to patent claims directed to methods for arranging data in a "self-referential" computer database. 2016 WL 2756255, at *1. Within the *Alice* framework, the Federal Circuit rejected the trial court's conclusion, and the defendant's position, that the claims were directed to an abstract idea of "organizing information using tabular formats." *Id*. at *6 ("describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule"). Rather, the Federal Circuit held that the asserted claims were "not simply directed to ***any*** form of storing tabular data, but instead are specifically directed to a ***self-referential*** table for a computer database." *Id*. (emphasis original). The Federal Circuit distinguished the claims asserted in *Enfish* from those at issue in cases like *Alice*, and *Bilski*, that recited nothing more than the addition of general purpose computer components to a fundamental business practice previously performed without computers. *Id*. at *7. In contrast, the Federal Circuit held, the claims in *Enfish*, were directed to "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Id*. at *8.

In this case, as in *Enfish*, the asserted claims in the '260 patent are not directed to an "abstract idea" at all. *See id*. For example, claim 11 of the '260 patent is directed to a special-purpose hardware system, namely "a terminal for processing transactions at the point of sale," configured to use a novel method to distinguish and identify "transaction data" (*i.e*, a mobile payment token) from a peripheral device within a stream of competing data feed inputs. '260 patent, claim 11. The '260 patent specification explains the complexity of adapting such a special-purpose device, typically configured to receive a payment credential from a magnetic

stripe reader, in order to recognize and process a payment credential (*i.e*, a mobile payment token) presented through a QR code scan via the same scanner used to scan codes on the items being purchased. '260 patent, col. 1, ll. 33-56. The device described in Claim 11 provides one solution to this problem, in the form of point-of-sale terminal that can "differentiate dynamically among different data streams by encoding a data stream with 'sentinels' that bracket the beginning and end" of the mobile payment credential. *Id*. at col. 1-2. As in *Enfish*, claim 11 of the '260 patent is directed to a non-abstract, specific method for structuring and handling data to solve a very specific business problem arising from the use of new payment methods at the point of sale. *See* 2016 WL 2756255, at *8. The claim is therefore not directed to an "abstract idea."

Indeed, Relevant's attempt to articulate the "abstract idea" allegedly foreclosed by claim 11 ("*recognizing a specific piece of information from a stream of information, and combining that information with a purchase amount to submit for payment*") actually describes a highly specific, three-step process for completing a particular type of retail transaction (a mobile payment transaction). This alleged "fundamental concept" is nothing like the claims to mathematical formulas, or to economic practices such as "risk hedging" or "settlement intermediation" performed on a computer, that have previously been held to foreclose the use of "abstract ideas." *See Alice*, 134 S. Ct. at 2355; *Bilski,* 561 U.S. at 604. Even Relevant cannot genuinely contend that the process for "*recognizing a specific piece of information from a stream of information, and combining that information with a purchase amount to submit for payment*" is an abstract "building block[ ] of human ingenuity." *Alice*, 134 S. Ct. at 2355. Indeed, other than LevelUp, Relevant is the only party that uses this alleged "abstract idea."

Even to the extent that claim 11 of the '260 patent could be said to "involve" some abstract idea, the claim is patent eligible because it does more than simply foreclose all

applications of an abstract idea performed on a general purpose computer. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248 (Fed. Cir. 2014). In *DDR Holdings*, the Federal Circuit upheld the eligibility of patent claims directed to "methods of generating a composite web page" including a combination of visual and content elements from two sites. *Id*. The court explained in *DDR* that the claimed methods were not merely an abstract "fundamental economic practice" implemented on a computer, but rather methods that addressed "a business challenge…particular to the Internet." *Id*. at 1256-57 ("the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks"); 1258 (the claims "do not broadly and generically claim 'use of the Internet' to perform an abstract business practice"). The Federal Circuit further explained that the claims at issue did "not attempt to preempt every application of the idea of increasing sales by" generating a composite web page, but rather claimed "a specific way to automate the creation of" such a page. *Id*. at 1259.

As in *DDR*, the claims at issue in this case, to the extent they can be said to involve an abstract idea, claim only one way for identifying a mobile payment credential from within varying input data streams at the point-of-sale. *See id*. The claims of the '260 patent are limited to a highly specific application of the claimed technique (within a specified point-of-sale terminal device), and do not seek to foreclose any use of the claimed methods on a general purpose computer. *See id*. Indeed, the claimed device solves a narrow problem first created by modern Internet-based mobile payment systems. For these reasons, the asserted claims do not seek to foreclose all possible uses of an "abstract idea." *See id*.

In an effort to support its argument that claim 11 of the '260 patent is nothing more than an abstract idea and "a long-standing basic commercial activity," Relevant cites an article

discussing data sequences transmitted by telegraph in 1844. Dkt. No. 18-1, pp. 14-15. Relevant's chosen example belies its own argument. The telegraph is the subject of the most fundamental Supreme Court precedent concerning patent-eligible subject matter under 35 U.S.C. § 101. In 1853, in *O'Reilly v Morse* (Relevant neglects to cite the decision), the Supreme Court held that Samuel Morse's patent claims to the telegraph, and to "the system of signs, composed of dots, spaces, and horizontal lines, (susceptible of being variously combined, representing numerals, words, and sentences,) for telegraphic purposes," were eligible for patent protection pursuant to 35 U.S.C. § 101. *O'Reilly v. Morse*, 56 U.S. 62, 101 (1853). Relevant's telegraph example therefore does not support its argument that the asserted claims in this case are "abstract."[6]

Further illustrating the flaw in Relevant's arguments, the Supreme Court in *O'Reilly* did find that one claim of Morse's patent *was* invalid under 35 U.S.C. § 101. *Id*. at 112. That claim (claim 8) was directed to any "use of the motive power of the electric or galvanic current, which I call electro-magnetism." *Id*. As to that claim, the Court held that Morse had not invented electro-magnetism, which was an abstract property, and compared that claim to a patent claim seeking to prevent the public from using "the motive power of steam." *Id*. at 113-14. These principles, the Court held, are abstract, non-patent eligible principles. *Id*. Those principles are nothing at all like the abstract idea presently alleged by Relevant to be foreclosed by the claims of the '260 patent: "*recognizing a specific piece of information from a stream of information, and combining that information with a purchase amount to submit for payment.*"

Relevant therefore has not demonstrated a likelihood of proving patent invalidity.

### C.    Relevant Has Not Raised a Substantial Question of Unenforceability

Relevant finally asserts (in just three sentences) that it is likely to establish, by clear and

---

[6] Relevant does not assert any argument that Morse's 1840 patent to the telegraph, or Morse codes, renders LevelUp's 2014 patent obvious or anticipated under 35 U.S.C. §§ 102-103.

convincing evidence, that the '260 patent is unenforceable for inequitable conduct. Dkt. No 18-1, pp. 20-21. The only grounds cited by Relevant for its claim are that "[d]iscovery would potentially show" that LevelUp intentionally delayed a submission of prior art to the Patent Office in order to conceal references. *Id*. Relevant does not allege that any of the references disclosed by LevelUp were even material to the prosecution. Regardless, the Federal Circuit has held that the common practice to which Relevant points cannot alone be grounds for a finding of inequitable conduct. *See Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1291-92 (Fed. Cir. 2011) (*en banc*); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). Relevant therefore has not established a likelihood of proving patent unenforceability.

### III.    LEVELUP IS LIKELY TO SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION

Relevant argues that LevelUp failed to show a likelihood of irreparable harm by asserting that there are "at least nineteen additional competitors" beyond LevelUp and Relevant that could have won the business of the three clients to which Relevant now provides the infringing system. Dkt. No. 18-1, p. 22. Relevant made the same assertion in October 2015, in response to LevelUp's motion for preliminary injunction in connection with Relevant's infringement of LevelUp's '619 patent. *See* Carroll Decl. (Dkt. 12-3), Ex. 3, pp. 32-34, 79-85. Relevant's argument now, as then, is hollow and does not withstand cross-examination. *Id*.

Only two of the additional entities identified by Relevant have built a merchant-branded mobile app permitting the redemption of loyalty rewards at the point-of-sale in this country. *See id*;  Decl. (2nd) of Andrew Boch, ¶¶ 3-4. Those two entities combined to market a total of three apps, each built for very large brands including Smoothie King, Checker's, and Sonic (all of which are over 650 locations). *Id*. Many of the remaining entities either do not market branded

merchant apps at all, or market apps that only permit online ordering (and are complementary to LevelUp and Relevant apps). *Id*.

To LevelUp's knowledge, none of these other entities competed with LevelUp and Relevant for the business of CilantroMex or Blaze Pizza, as none offer an alternative to the infringing system offered by Relevant. *Id*. at ¶ 5. As further evidence of the direct competition between LevelUp and Relevant, during 2015, three Relevant clients selected LevelUp as their new app provider in order to take advantage of LevelUp's proprietary mobile payment technology, which Relevant was unable to provide. *Id*. at ¶ 6. LevelUp is the only competitor currently offering its secure mobile payment system. *Id*.

These facts establish a strong likelihood that, had Relevant not offered an infringing system to CilantroMex and Blaze Pizza, LevelUp would have been selected for that business. More importantly, if Relevant is permitted to continue to make similar infringing offers while this case is pending, there is a substantial risk that Relevant will steal further market share directly from LevelUp, causing irreparable harm to LevelUp's growing business.

## IV.  CONCLUSION

For the foregoing reasons, LevelUp requests that the Court grant LevelUp motion for preliminary injunction.

Respectfully submitted,
*Attorneys for Plaintiff SCVNGR, Inc. d/b/a LevelUp*

*/s/ Rachelle R. Green*
Rachelle R. Green [5870]
DUFFY & SWEENEY, LTD.
1800 Financial Plaza
Providence, RI 02903
Phone: (401) 355-0700
Fax: (401) 455-0701
Email: Rgreen@duffysweeney.com

14

/s/ Brian C. Carroll
Brian C. Carroll (pro hac vice)
SCVNGR, INC. D/B/A LEVELUP
One Federal Street, 6th Floor
Boston, MA 02110
Phone: (617) 233-4167
Fax: (617) 812-1276
Dated: June 17, 2016                   Email: Brian@thelevelup.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June, 2016, I electronically served this
document on all parties by filing it with the Clerk of Court using the CM/ECF system, which will
send notification to all attorneys of record and make this document available for viewing and
downloading from the ECF system.


/s/ Rachelle R. Green
Rachelle R. Green


4829-5576-6323, v. 1

15