UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| SCVNGR, INC. d/b/a LEVELUP <br> Plaintiff, <br><br> v. <br><br> DAILYGOBBLE, INC. d/b/a RELEVANT, <br> Defendant. | C.A. 1:16-cv-00134-M-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff SCVNGR, Inc. d/b/a/ LevelUp ("LevelUp") brought the instant action against Defendant DailyGobble, Inc. d/b/a/ Relevant ("Relevant") for patent infringement. The patent at issue, United States Patent No. 8,924,260 ("the '260 patent"), provides for an improved POS system through the use of sentinels—that is, a first data sequence and second data sequence. A POS terminal equipped with the ability to recognize and process the sentinels can distinguish a data stream with the sentinels from other data inputs as well as interrupt a current process of the POS terminal to process a transaction. Relevant has moved for judgment on the pleadings, arguing that LevelUp's '260 patent is an abstract idea and therefore patent ineligible.

## BACKGROUND

LevelUp designs applications for restaurants that combine a reward's program and payment method into one quick-response code ("QR Code"). A

consumer can both receive rewards and initiate payment through the presentment of a single QR Code on her mobile device. The application eliminates the need for a consumer to provide a QR Code for a rewards program and a separate payment form. In order to process a QR Code transaction, LevelUp encodes the data stream with sentinels, a system for which LevelUp received the '260 patent.

LevelUp filed the complaint in this action, alleging that Relevant is infringing on LevelUp's '260 patent. ECF NO. 1. After LevelUp moved for a preliminary injunction, ECF No. 12, and the Court granted that motion, ECF No. 29, Relevant filed the instant motion for judgment on the pleadings, ECF No. 34. Relevant reasserts an argument—that the relevant claims in the '260 patent are directed towards patent-ineligible subject matter—previously briefed at the preliminary injunction stage, ECF No. 20 at 12–16; ECF No. 21 at 7–12, and rejected in this Court's granting of the preliminary injunction.

Mobile payment processing occurs through a mobile device's communication with an optical or near-field communication reader. The mobile device, once scanned, sends an electronic token to the POS terminal. Then, the POS terminal combines this token with other payment information, such as the price of the transaction and the name of the merchant, and sends the information to the payment processor.

The '260 patent encodes the data stream with a "sentinel" at the beginning and the end of the data stream. The sentinels bracket the token data to differentiate it from other data within the data stream (i.e., metadata) and other

data streams. The sentinels can provide multiple functional applications. Claims 1–2 concern the "interrupt protocol," which causes the POS terminal to interrupt its current task upon receipt of the first sentinel. After interruption, the POS terminal begins processing the payment information contained in the data stream. And after receiving the second sentinel, the POS terminal completes the transaction. Claims 11–12 are for a POS terminal configured to process a transaction as set forth by the method in Claims 1–2. The image below illustrates the patent '260 method of processing transactions through multiple data inputs.



The figure depicts a POS terminal receiving data streams from three different inputs—a scanner, reader, and touch screen. The data stream from the scanner contains two "LU" sentinels, and the data stream between the two sentinels contains the "interrupt" "data-handling protocol."

The claims at issue are as follows:

1. A method of processing a transaction at a point-of-sale (POS) terminal, the method comprising the steps of:

    receiving, by the POS terminal, a stream of data from a credential reader;

    recognizing, by the POS terminal, a first data sequence in the received data stream;

    in response to the recognized first data sequence, handling, by the POS terminal, transaction data coming in sequence after the first the data sequence according to a data-processing protocol stored on the POS terminal;

    recognizing, by the POS terminal, a second data sequence in the received data stream;

    in response to the recognized second data sequence, terminating, by the POS terminal, data handling according to the data-processing protocol; and

    completing, by the POS terminal, a transaction based on the transaction data,

    wherein the data-processing protocol comprises, by the POS terminal:

        interrupting execution of a current task; and

        combining the transaction data with item-purchase data received at the POS terminal and transmitting the data to a transaction-processing server for approval.

2. The method of claim 1, wherein the first data sequence is identical to the second data sequence.

11. A terminal for processing transactions at the point of sale, the terminal comprising:

    a communications interface;

    a computer memory;

    an input port for receiving data from a credential reader; and

a processor configured to (i) recognize a first data sequence in a data stream received from the credential reader via the input port, (ii) retrieve from the computer memory a data-processing protocol in response to the recognized first data sequence, (iii) execute the data-processing protocol and handle, in accordance therewith, transaction data coming in sequence after the first data sequence, (iv) recognize a second data sequence in the received data stream and, in response thereto, terminating data handling according to the data-processing protocol, and (v) complete a transaction based on the transaction data,

wherein execution of the data-processing protocol by the processor causes interruption of a concurrently executing task and immediate transmission of the combined data, followed by resumed execution of the interrupted task.

12. The terminal of claim 11, wherein the processor is configured to complete the transaction by combining the transaction data with purchase data including item-purchase data and causing transmission, via the communications interface, of the combined data to a transaction processor.

## LEGAL STANDARD

LevelUp urges the Court to apply the clear and convincing evidence standard to the motion for judgment on the pleadings. In *Ultramercial, Inc. v. Hulu, LLC*, the Federal Circuit applied the clear and convincing evidence standard to patent eligibility challenges, but that case has since been vacated by the Supreme Court. 722 F.3d 1335, 1342 (Fed. Cir. 2013), *vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014). On remand, the Federal Circuit's opinion never addressed whether the clear and convincing evidence standard still applies, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), but the concurrence asserted that no presumption of eligibility attaches, *Id.* at 720–21 (Mayer, J., concurring). Importantly, patent eligibility is a question of law. *OIP*

*Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). And as Justice Breyer stated, "[T]he evidentiary standard of proof applies to questions of fact and not to questions of law." *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 114 (2011) (Breyer, J., concurring). Because the outcome does not turn on the application of a presumption of patentability, the Court need not take a stance on the issue.

The Court reviews a motion for judgment on the pleadings under a similar standard as a Rule 12(b)(6) motion. *Downing v. Globe Direct LLC*, 682 F.3d 18, 22 (1st Cir. 2012). "[A] 'court may not grant a defendant's Rule 12(c) motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007) (quoting *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)).

## DISCUSSION

In order for a patent to receive protection, it must be patentable under 35 U.S.C. § 101. Section 101 states that "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may be eligible for patent protection. Three areas, however, remain patent ineligible: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). In analyzing patent eligibility under § 101, courts distinguish the "building blocks of human ingenuity" from claims that "integrate the building blocks into something more." *Id.* In *Alice*, the Supreme Court announced a two-part test for distinguishing between patent-

eligible and patent-ineligible subject matter. At the first step, the Court determines "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 2355. In doing so, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). If the Court answers the first step in the affirmative, the Court proceeds to the second step and "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs.*, Inc., 566 U.S. 66, 78–79 (2012)).

### A. Step One

The Court begins its analysis at step one of the two-part test. The Supreme Court has yet to announce a "definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). "Instead of a definition, then, the decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016). Furthermore, an important inquiry at the first step is "to ask whether the claims are directed to an

7

improvement to computer functionality versus being directed to an abstract idea." *Enfish*, 822 F.3d at 1335.

"[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358 (alteration in original) (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010)). That is, the mere fact that LevelUp's patent employs POS hardware does not, by itself, confer patent-eligibility status upon an otherwise abstract idea. In contrast, claims that are not simply implemented on a computer but actually improve the technological process are patent eligible. *Id.* at 2358. Here, the claims in the '260 patent actually improve the functioning of a POS terminal by enabling the POS terminal to differentiate between different forms of data streams (e.g., bar codes on an item for purchase and a barcode on a mobile device that operates as a payment method). The Court turns to two cases to illustrate this point.

In *Enfish*, the challenged patent was for a self-referential model, which stores all entity data in a single table and defines columns in the table by rows in that same table. 822 F.3d at 1330–31. The relational model, in contrast to the self-referential table, captures data using separate tables, and the relationships between those separate tables are captured in the rows of those tables. *Id.* at 1331. At the first step of the *Alice* inquiry, the self-referential model, as stated by the Federal Circuit, focused on "an improvement to computer functionality," not a task "for which the computer is invoked merely as a tool." *Id.* at 1335–36. In support of

8

this conclusion, the *Enfish* Court noted that "the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337.

Recently, the Federal Circuit considered the patent eligibility of a system for electronic stock trading, which displays the plurality of bids and plurality of asks in the market. *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 2016-1616, 2017 WL 192716, at *1–2 (Fed. Cir. Jan. 18, 2017). In addition, the system displays the prices corresponding to those bids and asks. *Id.* The district court and the Federal Circuit, in rejecting the notion that the claims were directed at an abstract idea, explained that "[t]he claims require a specific, structured graphical user interface paired with a prescribed functionality directly related to the graphical user interface's structure that is addressed to and resolves a specifically identified problem in the prior state of the art." *Id.* at *3.

Much like the claims in *Enfish* and *Trading Techs. Int'l*, the claims at issue in the '260 patent do not simply recite a well-known process and then instruct application of that process on a computer—that is, a POS terminal, in this case. Instead, the claims actually improve upon the functionality of payment processing. Just as the claims for the self-referential table in *Enfish* were directed towards "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory," 822 F.3d at 1339, the claims in the '260 patent are directed towards a specific method and POS terminal that differentiates among

9

multiple data inputs through the use of sentinels and interrupts a current task being performed by the POS terminal.

Categorizing the claims in the '260 patent as nothing more than recognizing and processing transaction data improperly describes the claims at a high level of abstraction, as warned against in *Enfish*. *Id.* at 1337. In *McRO*, for example, the Federal Circuit rejected the district court's ruling that a patent, which set forth specific rules for animating facial expressions of three-dimensional characters, was directed towards the abstract idea of lip synchronization. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016). And in doing so, the Court cautioned against "oversimplifying the claims." *Id.* at 1313. Importantly, "the claims are limited to rules with specific characteristics" that improve upon current animation techniques. *Id.* The claims in the '260 patent, likewise, apply to a single method for differentiating between different forms of data streams and interrupting a current function of the POS terminal.

### B. Step Two

In an abundance of caution, the Court proceeds to step two of the *Alice* test. At the second step of *Alice*, the Court "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 566 U.S. at 72–73). This can properly be described as "a search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent

upon the ineligible concept itself." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016). "The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2355).

Step two of *Alice* provides much clearer grounds for the Court's determination of patent eligibility. Even if the Court is to assume that the claims at issue in the '260 patent are directed towards an abstract idea, the specific improvements to the payment processing system adds an inventive concept. The Federal Circuit, in *Bascom*, found that "the discrete implementation of the abstract idea of filtering" satisfied the inventive concept requirement. *Id.* at 1350. Key to the patent eligibility determination, the patent provided "a technical improvement" for filtering content. *Id.*

The Court rejects any attempt to analogize the sentinels in the '260 patent to use of Morse code. The Federal Circuit specifically rejected the notion that a "pre-Internet analog" of a patent forecloses patent eligibility for that patent. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014). The patent in that case enabled an original website to create a composite of a third-party website on the original website, thereby eliminating any need for consumers to leave the original website. *Id.* at 1248–50. The proponents of patent ineligibility likened the website within a website to a "store within a store." *Id.* at 1258. Like the patent in *DDR Holdings*, the '260 patent overcomes unique technological

challenges. Namely, a POS terminal that can process multiple data streams at a time through different inputs and stop a lower priority transaction mid-stream. And the '260 patent claims do not "broadly and generically claim use of the internet" to overcome these challenges in payment processing. *See id.* at 1258–59.

## CONCLUSION

The claims at issue in the '260 patent do not foreclose a broad application of an abstract idea. Instead, the patent provides a single method for solving an existing problem for POS systems. The method and accompanying POS terminal are limited in application and leave open other ways to process data streams from multiple inputs and interrupt a current task being performed by a POS terminal. Accordingly, the claims at issue in the '260 patent are not directed to an abstract idea, and even if the claims are directed at an abstract idea, the '260 patent sufficiently states an inventive concept by improving the payment processing technology. For these reasons, Relevant's motion for judgment on the pleadings, ECF No. 34, is DENIED.

SO ORDERED:

John J. McConnell, Jr.
United States District Judge

Date: March 2, 2017